## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LEENA KUMAR,

*Plaintiff*

v.

BARRAK ABDULMOHSEN ALHUNAIF
and KHALEDAH SAAD ALDHUBAIBI,

*Defendants*

**CIVIL ACTION NO.** _____

**JURY TRIAL DEMANDED**

## COMPLAINT

### I.    PRELIMINARY STATEMENT

1.      Plaintiff Leena Kumar endured six months of physical abuse, threats, unrelenting work, and wage theft at the hands of Barrak Abdulmohsen Alhunaif ("Abdulmohsen"), the former attaché of the Permanent Mission of the State of Kuwait to the United Nations, and his wife, Khaledah Saad Aldhubaibi, known to Ms. Kumar as "Maddam."

2.      Defendants prevented Ms. Kumar, who they employed as a housekeeper in New York City, from accessing her passport and visa, threatened her with arrest if she tried to leave Defendants' residence, subjected her to physical and psychological abuse, and forced her to immediately kick back to Defendants the vast majority of her wages.  Together, Defendants designed and carried out this scheme to force Ms. Kumar to continue working for them in deplorable conditions and for pay less than $1.50 per hour.

3.      For these reasons, Ms. Kumar brings suit against Defendants for violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1595, and New York Labor Law.  Ms. Kumar also brings a breach of contract claim.

4.     On October 11, 2022, Defendants were indicted on charges that they conspired to commit and committed visa fraud and fraud in foreign labor contracting and that they committed forced labor in violation of the TVPA. *See United States v. Barrak Abdulmohsan Alhunaif*, Case No. 1:22-cr-00538-JSR (S.D.N.Y).  The indictment is attached hereto as Ex. A.

## II.     JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 18 U.S.C. § 1595(a) (TVPA).

6.     This Court has jurisdiction over Plaintiff's pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).  Plaintiff's state law claims are part of the same case or controversy as Plaintiff's federal claim.

7.     Alternatively, this Court has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332.  Plaintiff resides in and is a citizen of the state of New York; upon information and belief, Defendants reside in and are citizens of Kuwait; and the matter in controversy exceeds the sum or value of $75,000.

8.     This Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302 (personal jurisdiction by acts of non-domiciliaries) because Defendants transacted business within New York, committed tortious acts within New York, and used and possessed real property within New York.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.  A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

10.     Upon information and belief, Defendants currently are not residents in the United States.

### III.    PARTIES

**A.    Plaintiff**

11.    Plaintiff Leena Kumar is an individual who resides in New York.

12.    Ms. Kumar is, and at all relevant times has been, a citizen of India.

13.    Ms. Kumar is a native Hindi speaker.  She speaks and understands only very limited English.

14.    From approximately May through October 2017, Ms. Kumar lived with and worked for Defendants at their personal residence located near the United Nations in New York City, borough of Manhattan.

**B.    Defendants**

15.    Defendant Abdulmohsen was a Diplomatic Attaché to the Permanent Mission of the State of Kuwait to the United Nations and lived in Defendants' residence near the United Nations in New York City at all times relevant to Ms. Kumar's claims.

16.    Defendant Aldhubaibi is the wife of Defendant Abdulmohsen.  At all times relevant to Ms. Kumar's claims, Aldhubaibi lived with Abdulmohsen in their residence near the United Nations in New York City.

17.    Defendants are Kuwaiti nationals.

18.    Upon information and belief, Defendants now reside in Kuwait.

19.    At all times relevant to this action, Defendants were "employers" of Ms. Kumar within the meaning of New York Labor Law.

20.    At all times relevant to this action, Ms. Kumar was an "employee" of Defendants within the meaning of New York Labor Law.

21.    At all times relevant to this action, Ms. Kumar was not subject to any overtime exemptions under New York Labor Law.

22.     At all times relevant to this action, Defendants "employed" Ms. Kumar within the meaning of New York Labor Law.

23.     At all times relevant to this action, Ms. Kumar was a "manual worker" within the meaning of NYLL §§ 190(4) and 191(1)(a), and New York State Department of Labor regulations.

### IV.     FACTUAL BACKGROUND

24.     Ms. Kumar was born in Bangalore, India.

25.     Ms. Kumar, who is Christian, married a Hindu man.  His family was associated with a right-wing Hindu nationalist organization and did not approve of the marriage.  As a result, Ms. Kumar had to go into hiding.

26.     In India, Ms. Kumar found work where she could, mostly as a domestic worker cleaning houses and caring for others' children.

27.     In early 2017, an acquaintance told Ms. Kumar about an agent who would help Ms. Kumar get a good job in the United States.  Ms. Kumar understood the agent's name to be "Alvin."

28.     She reached out to Alvin, who told her she would need to pay him around 9 lakh rupees (roughly $11,000 U.S. dollars) for the work opportunity and visa processing.

29.     Ms. Kumar viewed the job Alvin described as a life-changing opportunity to escape the poverty and repression she experienced in India. Ms. Kumar took out loans from a bank and family members to pay the approximately 9 lakh rupees.

30.     These loans were the equivalent of over a decade of earnings for a domestic worker in India.    In exchange, Alvin connected Ms. Kumar with Defendants and helped Ms. Kumar get a passport and visa for entry into the United States.

31.     Defendants were aware of Ms. Kumar's debts.

32.     Defendants used Ms. Kumar's debts to coerce her to continue working for them.

33.     Ms. Kumar reasonably believed she could only pay off these debts by working for the Defendants.

34.     Ms. Kumar entered the United States on a G-5 visa to work as a domestic servant for Defendants.

35.     A G-5 visa is for personal employees of certain officials at international organizations.

36.     As a member of the Kuwaiti Mission to the United Nations, Defendant Abdulmohsen was eligible to secure a G-5 visa for Ms. Kumar.

37.     Under the terms of a G-5 visa, Ms. Kumar was not permitted to work for another employer.

38.     An employer seeking to G-5 visa on behalf of a domestic worker must submit an employment contract with the visa application.

39.     While Ms. Kumar was in India, she and Defendant Abdulmohsen signed an employment contract for Ms. Kumar to work for Defendants.   The contract promised:

   a.   Ms. Kumar's work duties would include cleaning, kitchen maintenance, laundry and cooking.

   b.   Ms. Kumar's work hours would be eight hours each workday: from 8:00 a.m. to 1:00 p.m. and from 3:00 p.m. to 6:00 p.m.  She would have a lunch break from 1:00 p.m. to 3:00 p.m.

   c.   Ms. Kumar's presence at the Defendants' residence would not be required except during working hours.

   d.   She would have Saturdays and Sundays off each week; and two weeks of paid vacation, two weeks of paid sick leave, and ten paid holidays per year.

e.  She would be paid a regular rate of pay of $10.50 per hour, and overtime for work "in excess of the normal working hours" at the rate of $15.75 per hour.  Further, she would "be paid overtime wages according to New York State law.  Currently, for live-in employees[,] hours worked over 40 per week are compensated at $15.75 per hour."

f.  Her wages would be paid on a weekly basis.

g.  The employer would not withhold Ms. Kumar's passport, visa, a copy of the employment contract, or other property.

h.  The employer would pay for Ms. Kumar's medical, dental, and hospital expenses, including professional fees and medication.

i.  The employer would provide Ms. Kumar with free lodging, including a private bedroom and bathroom.

j.  "The employer agrees to abide by all Federal, State, and local laws in the United States."

40.    At the time Defendant Abdulmohsen entered into the employment contract with Ms. Kumar, he was acting with the actual authority of Defendant Aldhubaibi.

41.    The Defendants submitted or caused to be submitted this contract to the U.S. government as part of Ms. Kumar's G-5 visa application.

42.    Defendants violated each of the terms of the contract described in Paragraph 39.

43.    Defendants knew they would not comply with the terms of the contract at the time Defendant Abdulmohsen signed it and when they submitted the contract to the U.S. government as part of Ms. Kumar's G-5 visa application.

44.     All of her work for Defendants was performed in New York and all of her in-person interactions with Defendants occurred in New York.

45.     Plaintiff's duties were exclusively manual and non-clerical.

46.     Plaintiff spent nearly all of her working time engaged in physical tasks.

47.     In violation of the employment contract, Defendants required that Ms. Kumar frequently care for Defendants' children.

48.     Throughout her employment, Plaintiff's duties included cleaning, washing and ironing clothes, taking care of the Defendants' children, and cooking for the Defendants, their children, and their guests.

49.     In violation of the employment contract, throughout Ms. Kumar's employment, Defendants required that she work from 5:30 a.m. until 1:30 a.m. the next morning, with only brief breaks during her workday to eat the family's leftovers.

50.     In violation of the employment contract, throughout her employment, Ms. Kumar worked these hours seven days per week, with only a brief break to go to church on Sundays.

51.     In violation of the employment contract, throughout her employment, Ms. Kumar was not allowed to take Saturdays or Sundays off.  On Sundays, Ms. Kumar was permitted only to go to Mass at a nearby church, but this generally lasted a little over an hour, after which she had to return to work.

52.     During Ramadan, a holy month lasting approximately 30 days, Ms. Kumar would have to wake up at 3:00 a.m. to prepare food for the family's *suhoor*, the meal consumed before the day-long fast.

53.     Throughout Ms. Kumar's employment, she worked more than forty-four hours each workweek.

54.     Defendants never paid Ms. Kumar the overtime premium rate for hours worked more than forty-four hours in a workweek.

55.     Throughout Ms. Kumar's employment, she worked more than forty-four hours each workweek.

56.     Ms. Kumar was never paid the overtime premium rate for hours worked more than forty-four hours in a workweek.

57.     In violation of the employment contract, Ms. Kumar was not allowed to leave the residence during non-working hours—scant though they were—other than to attend Mass, go to the bank with one of the Defendants, or run errands for Defendants.

58.     The oppressive work hours and restrictions on her movement and activities caused Ms. Kumar to suffer psychological deterioration.

59.     Defendants imposed the oppressive work hours on Ms. Kumar in part to ensure she did not have the time or psychological capacity to plan her escape, thereby coercing her to continue working for the Defendants.

60.     Defendants used the threat of financial harm arising out of her debts in India to coerce her to continue working for Defendants.

61.     In violation of the employment contract and NYLL, Defendants did not pay Ms. Kumar at a rate of $10.50 per hour or overtime at a rate of $15.75 per hour.  Rather, Defendants paid Ms. Kumar $2,000 per month, regardless of her hours, before kickbacks.  This averages out to less than $4.00 per hour.

62.     However, Ms. Kumar was not allowed to retain even the unlawfully low wages of $2,000 per month. As part of Defendants' scheme to conceal their wage theft and human trafficking scheme, one of the Defendants would go to the bank with Ms. Kumar when she received

her wages and required her to kick back, through a cash withdrawal, $1,300 to Defendants. Therefore, she only was permitted to keep $700 per month. This is the equivalent of a flat rate of less $1.50 per hour.

63.     Defendants withheld wages from Ms. Kumar in part to prevent her from having the financial wherewithal to pay off her debts or escape, thereby coercing her to continue working for the Defendants.

64.     In violation of the employment contract, Defendants did not provide Ms. Kumar with any paid vacation, paid sick leave, or paid holidays.

65.     In violation of the employment contract and NYLL, Defendants did not pay Ms. Kumar on a weekly basis.

66.      Throughout her employment, Defendants paid Ms. Kumar on a monthly basis, rather than on a weekly basis, so she would not have the financial wherewithal to escape, thereby coercing her to continue working for the Defendants.

67.     As a result, for all but the last week of each monthly pay period when Ms. Kumar was employed by Defendants, her wages were paid late under NYLL § 191.

68.     During the period that Ms. Kumar's wages were late, she was deprived of the opportunity to spend her wages on necessary expenses, to use her wages for other purposes, or to earn interest on her wages.

69.     Defendants also failed to furnish to Ms. Kumar, at the time she began working for Defendants, written notice of her wage rates or a written disclosure of the other information required by NYLL § 195(1) in her primary language.

70.     Defendants never thereafter furnished to Ms. Kumar written notice or a disclosure of the information required by NYLL § 195(1).

71.     In addition, Defendants failed to furnish proper and accurate wage statements to Ms. Kumar as required by NYLL § 195(3).

72.     In violation of the employment contract, Defendants seized Ms. Kumar's passport and visa when she arrived in the United States and withheld it from her for the duration of her employment with Defendants.

73.     Defendants seized Ms. Kumar's passport and visa so she would not have identity documents or proof of immigration status if she were to escape, thereby coercing her to continue working for Defendants.

74.     Ms. Kumar reasonably believed she could not leave Defendants' employment without her passport and visa.

75.     In violation of the employment contract, Defendants violated federal laws (the Fair Labor Standards Act and the Trafficking Victims Protection Act) and state laws (New York Labor Law).

76.     The Defendants' children were unruly and required near-constant care.  They would scream at Ms. Kumar, hit her, and pull her hair.

77.     A few months after Ms. Kumar started working, the Defendants' son punched Ms. Kumar on her cheek using a hard ball.  The blow was very painful, and Ms. Kumar's cheek swelled up.  When the pain and swelling did not decrease after a few days, the Defendants took Ms. Kumar to a hospital or clinic.  Medical staff at the hospital or clinic performed a procedure on Ms. Kumar's cheek—she believes they applied stitches—while she was under anesthesia.

78.     Later, in violation of the employment contract, Defendant Aldhubaibi made Ms. Kumar pay $500 towards the cost of the medical treatment, reducing her wages that month to $200.

79.     Defendants made Ms. Kumar reimburse the cost of medical treatment in part so she would not have the financial wherewithal to escape, thereby coercing her to continue working for the Defendants.

80.     Defendants did not allow Ms. Kumar to reprimand the children if they misbehaved, or even when they physically attacked Ms. Kumar.

81.     Defendants were aware their children physically attacked Ms. Kumar but did nothing to prevent the attacks.

82.     Defendant Aldhubaibi told Ms. Kumar she would make a false police complaint alleging child abuse and have Ms. Kumar arrested if she reprimanded the children.

83.     When Ms. Kumar complained about her treatment and her wages, Defendants threatened to call the police.  They told her they would lie and tell the police Ms. Kumar had stolen something so she would go to jail. Defendant Abdulmohsen told Ms. Kumar the police would believe him over her because he is an "ambassador." Defendant Abdulmohsen was not an ambassador.

84.     After being told that Defendants would call the police, Ms. Kumar was afraid to and no longer raised concerns about her work or pay.

85.     The Defendants' threats of arrest were an abuse of legal process designed to coerce Ms. Kumar to continue working for them.

86.     Based on these threats of abuse of legal process, Ms. Kumar reasonably believed she could not seek law enforcement assistance to escape.

87.     In October 2017, Defendant Aldhubaibi noticed one of her children had a dirty diaper.  Defendant Aldhubaibi started screaming at Ms. Kumar, pulled her hair, and shoved her. Ms. Kumar fell onto the arm of the sofa.  She was in physical pain, and she was terrified.

88.     When Defendant Abdulmohsen came home, he tried to excuse Defendant Aldhubaibi's assault by telling Ms. Kumar that Defendant Aldhubaibi was tense because of the two children.  While he was explaining this, Ms. Kumar was lying on her side on the sofa because she was in so much pain.  Defendant Aldhubaibi's mother and sister, who were also at the apartment, cursed at Ms. Kumar, complaining that they had spent so much money paying and feeding her.

89.     Defendant Aldhubaibi's physical assault, Defendant Abdulmohsen's acquiescence, and the verbal abuse were designed to intimidate Ms. Kumar and to show her the severe consequences she would face if she did not meet Defendants' demands, thereby coercing Ms. Kumar to continue working for them.

90.     In mid-October 2017, after the assault, Ms. Kumar reached a breaking point.  She called the police because of the abuse, hoping the police could help her leave.  When the police found out Ms. Kumar worked for a Kuwaiti diplomat, they took her to the Kuwaiti consulate. Someone at the consulate arranged for a flight back to India, and Ms. Kumar was taken to the airport.

91.     Ms. Kumar was devastated.  While she waited at the airport, she was crying and considering suicide.  She was ashamed to return to India, having not fulfilled her and her family's dreams, and with debts she would never be able to repay. An Indian man saw how upset she was and spoke with her.  He offered to find a safe place for Ms. Kumar to go.  She gratefully accepted his offer.  He took her to New Jersey, where some people in the Indian community helped her.

## V.     CAUSES OF ACTION

### COUNT 1
#### VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION ACT

92.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

93.     This cause of action sets forth Plaintiff's claims against Defendants under the civil remedies provision of the TVPA, 18 U.S.C. § 1595, in that

    a.  Plaintiff is a victim of violations of the following provisions of Title 18, Chapter 77 of the United States Code: 18 U.S.C. §§ 1589, 1590, 1592(a), and 1597;

    b.  Defendants were perpetrators of the foregoing violations; and

    c.  Defendants knowingly benefited, financially or by receiving anything of value from participation in a venture Defendants knew or should have known engaged in the foregoing violations.

94.     Defendants, directly or through their agents, knowingly recruited and obtained Plaintiff's labor or services.

95.     Defendants attempted to and did subject Plaintiff to forced labor in violation of 18 U.S.C. § 1589.

96.     In violation of 18 U.S.C. § 1589(1)-(4), Defendants knowingly recruited and obtained Plaintiff's labor or services by means of:

    a.  Force;

    b.  Threats of force;

    c.  Serious harm;

    d.  Threats of serious harm;

    e.  Abuse of legal process;

f.   Threats of abuse of legal process; and

g.   A scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not

perform such labor or services, she would suffer serious harm or physical restraint.

97.   Defendants' scheme, *inter alia*,

a.   To threaten and use force against Plaintiff if she did not comply with their demands;

b.   To force Plaintiff to live and work in conditions causing psychological deterioration

and harm;

c.   To limit Plaintiff's outside contacts;

d.   To cause financial harm—the inability to have the means to escape or pay off her

debts –by forcing Plaintiff to kick back most of her wages to Defendants;

e.   To threaten to cause financial harm by threatening to falsely accuse Plaintiff of theft

and have her arrested so she would not be able to pay her debts in India; and

f.   To threaten to cause reputational harm by threatening to falsely accuse Plaintiff of

theft and have her arrested

was designed to convince Plaintiff that she would suffer serious harm if she were to leave her work

for Defendants.

98.   Plaintiff reasonably believed she would suffer this serious harm if she did not

continue working for Defendants.

99.   Defendants' scheme to seize Plaintiff's passport and to threaten arrest was an abuse

or threatened abuse of law or legal process designed to force Plaintiff to continue working for

Defendants.

100.   Plaintiff continued working for Defendants because of this abuse or threatened

abuse of law or legal process.

101.    In violation of 18 U.S.C. § 1590, and in addition to the violations of 18 U.S.C. § 1589 set forth above, Defendants, directly or through their agents, knowingly recruited, transported, harbored and/or obtained Plaintiff for labor or services in furtherance of the Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code:

    a.    forced labor, violating 18 U.S.C. § 1589;

    b.    removing, confiscating, or possessing Plaintiff's passport and visa in the course of, or with the intent to violate 18 U.S.C. §1589, violating 18 U.S.C. § 1592(a);

    c.    attempting to violate 18 U.S.C. § 1589, thereby violating 18 U.S.C. § 1594(a); and

    d.    conspiring to violate 18 U.S.C. §§ 1589 and 1592, thereby violating 18 U.S.C. § 1594(b).

102.    In violation of 18 U.S.C. § 1592(a), Defendants, directly or through their agents, concealed, removed, confiscated, and/or possessed Plaintiff's passport and other immigration documents in the course of violating and/or with the intent to violate 18 U.S.C. §§ 1589 and 1590.

103.    In violation of 18 U.S.C. § 1594(b), Defendants, directly or through their agents, conspired with each other to violate 18 U.S.C. §§ 1589 and 1592.

104.    In violation of 18 U.S.C. § 1597(a), Defendants concealed, removed, confiscated, and possessed Plaintiff's passport and visa in the course of committing fraud in foreign labor contracting.  *See* 18 U.S.C. § 1351(a).  Specifically, Defendants directly or through their agents concealed, removed, confiscated, and possessed Plaintiff's passport and visa in the course of knowingly and intentionally misrepresenting the terms and conditions of her employment. As a proximate result of the conduct of Defendants, Plaintiff suffered financial and other damages.

105.    Under the TVPA, Plaintiff is entitled to recover compensatory and punitive damages in an amount to be proven at trial, including but not limited to:

a.  compensation at the prevailing wage rate including all applicable overtime wages for the work done while employed by Defendants; and

b.  other compensatory damages, including compensation for physical and emotional injuries; and

c.  compensation for all moneys paid during the recruitment process and in order to come to the United States to work, including travel expenses in India; and

d.  punitive damages; and

e.  attorneys' and experts' fees and costs as authorized by 18 U.S.C. § 1595.

## COUNT 2
### VIOLATIONS OF NEW YORK LABOR LAW
(Minimum Wage)

106.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

107.    At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

108.    During Plaintiff's employment, Defendants failed to pay Plaintiff at the applicable legal minimum hourly wage for every hour worked, in violation of NYLL § 652.

109.    Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid minimum wages, an equal amount as liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## COUNT 3
### VIOLATIONS OF NEW YORK LABOR LAW
(Overtime)

110.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

111.    Defendants willfully failed to pay Plaintiff overtime at a rate of at least one-and-a-half times her regularly hourly rate for every hour she worked above forty-four hours in a single work week.

112.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of New York Labor Law §§ 198, 663, and 681.

113.    Plaintiff is entitled to her unpaid wages mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful actions and omissions, in accordance with New York Labor Law §§ 198, 663, and 681.

114.    Plaintiff seeks, and is entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

**COUNT 4**
**VIOLATIONS OF NEW YORK LABOR LAW**
(Late Payment of Wages in Violation of NYLL § 191)

115.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

116.    Under NYLL § 191(a)(i) and supporting New York State Department of Labor Regulations, manual workers such as Plaintiff must be paid weekly and not later than seven calendar days after the end of the week in which wages are earned.

117.    Defendants willfully failed to pay Plaintiff her wages weekly, in violation of New York Labor Law § 191(a). Instead, Defendants paid Plaintiff her wages once a month.

118.    As a result of Defendants' failure to pay Plaintiff her wages weekly as required by NYLL § 191(a)(1), at least three quarters of Plaintiff's wages were paid later than seven calendar days after the end of the week in which wages were earned.

119.    Because the wages were paid late, Plaintiff was denied the opportunity to spend or invest her legally-owed wages.

17

120.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of New York Labor Law §§ 198, 663, and 681.

121.    Plaintiff is entitled to an award of liquidated damages for her late-paid wages, as a consequence of Defendants' unlawful acts and omissions in accordance with New York Labor Law §§ 198, 663, and 681.

122.    Plaintiff also seeks, and is entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

## COUNT 5
### VIOLATIONS OF NEW YORK LABOR LAW
(Failure to Pay Promised Wage for All Hours Worked in Violation of NYLL § 193)

123.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

124.    Defendants willfully failed to pay Plaintiff promised wages for all hours worked, in violation of New York Labor Law § 193.

125.    Defendants' failure to pay the required wages as set forth above was willful within the meaning of New York Labor Law §§ 198, 663, 681.

126.    Plaintiff is therefore entitled to her unpaid wages as mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of Defendants' unlawful acts and omissions in accordance with New York Labor Law §§ 198, 663, 681.

127.    Plaintiff also seeks, and is entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

## COUNT 6
### VIOLATIONS OF NEW YORK LABOR LAW
(Failure to Provide Wage Notice and Wage Statements in Violation of NYLL § 195)

128.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

129.    Defendants failed to provide Plaintiff, at the time of her hiring or thereafter, a wage notice in her primary language containing her rates of pay and other information as required by New York Labor Law § 195(1).

130.    Defendants also failed to provide Plaintiff with accurate wage statements with every payment of wages which provided all of the information required under New York Labor Law § 195(3).

131.    For Defendants' violation of New York Labor Law § 195(1), Plaintiff is entitled to $50 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to New York Labor Law §198(1-b).

132.    For Defendants' violation of New York Labor Law § 195(3), Plaintiff is entitled to $250 for each day of work in which this violation continued to occur, in an amount not to exceed $5,000, pursuant to New York Labor Law §198(1-d).

133.    Plaintiff also seeks, and is entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

## COUNT 7
### BREACH OF CONTRACT

134.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

135.    Plaintiff and Defendants entered into a written employment contract.

136.    Plaintiff performed her obligations under the contract.

137.    Defendants breached the contract by, *inter alia*:

  a.    Requiring Ms. Kumar to engage in work duties not specified in the contract;

  b.    Compelling Ms. Kumar to work beyond her contracted work hours;

  c.    Restricting Ms. Kumar's movement and freedom throughout her employment;

    d.   Failing to provide her with weekends off, paid vacation, paid sick leave, or paid holidays;

    e.   Failing to pay her the rates specified in the contract or the overtime rate required by New York State law;

    f.   Failing to pay her on a weekly basis;

    g.   Withholding her passport and visa;

    h.   Failing to pay for Ms. Kumar's medical, dental, and hospital expenses;

    i.   Violating Federal, State, and local laws in the United States, including the TVPA.

138.    Defendants' breaches of the contract directly and proximately caused Ms. Kumar damages.

## VI.    DEMAND FOR TRIAL BY JURY

139.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this Complaint.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order:

a.   assuming jurisdiction over this action;

b.   declaring Defendants violated the TVPA and New York Labor Law;

c.   permanently enjoining Defendants from further violations of the TVPA and New York Labor Law;

d.   granting judgment to Plaintiff on her TVPA claims and awarding her compensatory and punitive damages;

e.  granting judgment to Plaintiff on her New York Labor Law claims and awarding her unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute;

f.  granting judgment to Plaintiff on her New York breach of contract claim and awarding her damages arising out of the breach;

g.  awarding prejudgment and postjudgment interest as allowed by law;

h.  awarding Plaintiff costs and reasonable attorneys' fees; and

i.  granting such further relief as this Court finds just.

Respectfully submitted this 12th day of January, 2023,


 /s/Daniel Werner
Daniel Werner
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave., Suite 1080.
Decatur, GA 30030
(678)271-0300
dan@decaturlegal.com

Patricia Kakalec
Kakalec Law PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Patricia@KakalecLaw.com

*Attorneys for Plaintiff*