UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEENA KUMAR,<br><br>       Plaintiff,<br><br>    v.<br><br>BARRAK ABDULMOHSEN ALHUNAIF,<br>KHALEDAH SAAD ALDHUBAIBI,<br><br>       Defendants. | 23 Civ. 321 (DEH)<br><br>**OPINION AND ORDER** |

DALE E. HO, United States District Judge:

  Plaintiff Leena Kumar brings this Complaint alleging violations of the Trafficking Victims Protection Act ("TVPA") and New York Labor Law ("NYLL") against Defendants Barrak Abdulmohsen Alhunaif ("Defendant" or "Defendant Alhunaif") and Khaledah Saad Aldhubaibi ("Defendant Aldhubaibi") (collectively, "Defendants").[1]  Before the Court are Plaintiff's motion for default judgment against Defendant Alhunaif, *see* ECF Nos. 42, 43, 48, and Defendant's opposition to that motion, ECF No. 61.  The Court treats Defendant's opposition also as a motion for relief from entry of default pursuant to Rule 55(c)[2] and a putative motion to dismiss pursuant to Rule 12(b).  *See* ECF No. 65.  For the reasons stated below, Defendant's motion for relief from default is **DENIED**, Plaintiff's motion for default judgment is **GRANTED** as to liability, and Defendant's motion to dismiss is **DENIED** as untimely.

---

  [1] Because Defendant Aldhubaibi has not been served or appeared in this action, this opinion concerns only Defendant Alhunaif.  The Court will refer to Defendant Alhunaif as "Defendant" and to the defendants collectively as "Defendants."

  [2] All references to the Rules are to the Federal Rules of Civil Procedure.

## BACKGROUND

From approximately May through October 2017, Plaintiff was employed as a housekeeper by Defendant Alhunaif, who was then the attaché of the Permanent Mission of the State of Kuwait to the United Nations, and his wife, Defendant Aldhubaibi.  Complaint ¶¶ 2, 14-15, ECF No. 1.[3]  Plaintiff alleges that she endured six months of physical abuse, threats, unrelenting work, and wage theft at the hands of Defendants.  *Id.* ¶ 1.  She alleges that Defendants prevented her from accessing her passport and visa and threatened her with arrest if she tried to leave their residence.  *Id.* ¶ 2.  Contrary to her employment contract, Plaintiff was required to work extremely long hours—from 5:30 a.m. until 1:30 a.m.—for very little pay.  *Id.* ¶¶ 49, 61-62.  Plaintiff was nominally paid $2,000 per month, but Defendants required her to withdraw $1,300 in cash each month and give it back to them, leaving Plaintiff with only $700 per month.  *Id.* ¶ 62.  Plaintiff was therefore paid the equivalent of less than $1.50 per hour.  *Id.*

On October 11, 2022, Defendants were indicted on charges of visa fraud, fraud in foreign labor contracting, and forced labor under various sections of Titles 18 and 28 of the U.S. Code.  *See United States v. Alhunaif*, Case No. 22 Crim.538 (S.D.N.Y.).  However, Defendants left the United States and the criminal prosecution has not advanced.  *See id.*; Pl.'s Mem. Supp. Mot. Default J. ("Pl.'s Mem.") 2, ECF No. 48.

Plaintiff filed the Complaint in this matter on January 13, 2023.  *See* ECF No. 1.  On July 22, 2023, Plaintiff moved for leave to serve Defendants in Kuwait using alternative service—specifically, through Facebook—and the Court denied the motion without prejudice to renewal.  *See* ECF No. 14.  After obtaining third-party discovery to procure information to help effectuate

---

[3] The facts as described in this Opinion are taken primarily from the Complaint and are assumed to be true for purposes of adjudicating the Motion to Dismiss.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

service, on November 13, 2023, Plaintiff filed a renewed motion for an order permitting alternative service. *See* ECF No. 24. The Court granted the request as to Defendant Alhunaif,[4] holding that (1) the Hague Convention does not apply because Defendant's physical address in Kuwait remains unknown despite Plaintiff's reasonable diligence in searching for a physical address, and (2) the proposed alternative methods of service on Defendant—*i.e.*, email, text messages, WhatsApp messages, and Facebook messages—comport with due process. *See* December 8, 2023 Op. & Order ("Dec. 2023 Op."), ECF No. 29.

Plaintiff, through counsel, served Defendant via the approved alternative methods on December 13 and 14, 2023. *See* ECF No. 32. Plaintiff's counsel received confirmation of delivery of the message and service documents from WhatsApp (double checkmark) and email (delivery confirmation email). *Id.* On February 14, 2024, Plaintiff requested a Clerk's Certificate of Default, *see* ECF No. 33, and the Clerk of Court entered Defendants' default, *see* ECF No. 36. The Court subsequently directed Plaintiff to file a motion for default judgment. *See* ECF No. 35. After Plaintiff filed a motion for default judgment on April 4, 2024, *see* ECF No. 42, the Court set a deadline of May 6 for any opposition to the motion by Defendant and scheduled a conference, which was later rescheduled to June 11. *See* ECF Nos. 45, 51.

The evening before the rescheduled conference, the Court received an email to chambers from the same email address Plaintiff had used to serve Defendant, with a letter attached purporting to be from Defendant Barrak Abdulmohsen Alhunaif. The letter stated that Defendant "was only recently made aware of the litigation, the Plaintiff's motion for default judgment, and the conference," and requested postponement of the conference. *See* ECF No. 53.

---

[4] Plaintiff sought to serve Defendant Aldhubaibi through text messages and Facebook messaging, as well as through her spouse's email addresses and WhatsApp account, but the Court denied that request. *See* Dec. 2023 Op. 10-12.

3

The conference went ahead as scheduled; Defendant did not appear. *See* June 11, 2024 Minute Entry. The next day, the Court ordered Defendant to appear and show cause on July 12, 2024 why an order should not be issued granting a default judgment against him. *See* ECF No. 54. On June 28, counsel for Defendant entered a "limited appearance" on the docket, *see* ECF No. 56, and filed a letter requesting an extension of time to review the filings and submit the appropriate papers because he had just been retained on the evening of June 27, *see* ECF No. 57. The Court construed counsel's letter as a request to extend the deadline to file an opposition to the motion for default judgment and granted an extension until July 8. *See* ECF No. 59. To date, the Court has not extended Defendant's deadline to answer or otherwise respond to the Complaint.

Defendant filed his opposition to the motion for default judgment on July 8, 2024. *See* ECF No. 61. In it, he requested vacatur of the Court's entry of default and asserted two jurisdictional bases for requesting dismissal of the Complaint. *See id.* Plaintiff filed a letter-motion to strike Defendant's opposition brief for failure to comply with the federal, district, and individual rules requiring that a request for dismissal be made by motion. *See* ECF No. 62. At the conference on July 12, at which Defendant appeared through counsel, the Court stated that it would construe Defendant's jurisdictional arguments in the opposition to the motion for default judgment as arguments supporting a motion to dismiss, and set a schedule for Plaintiff's response and Defendant's reply. *See* ECF No. 65. Although the Court stated that it would hear Defendant's arguments in favor of dismissal, it did not state whether it would consider the motion to dismiss to be timely. *See id.*

4

**LEGAL STANDARDS**

I. **Default and Default Judgment**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Unless the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). "The court may conduct hearings or make referrals" to "conduct an accounting," "determine the amount of damages," "establish the truth of any allegation by evidence," or "investigate any other matter." *Id.*

Once the clerk has entered a party's default, the "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Because Rule 55(c) does not define the term 'good cause,' the Second Circuit has established three criteria that must be assessed in order to decide whether to relieve a party from default . . . : (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). Once a default has been entered, "opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

II. **Dismissal for Lack of Subject Matter Jurisdiction**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Generally, the plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving that it exists by a

5

preponderance of the evidence." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019).

### III. Dismissal for Insufficient Service of Process

"When a defendant moves for dismissal for inadequate service of process pursuant to Rule 12(b)(5), the plaintiff 'bears the burden of establishing that service was sufficient.'" *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order)). "In considering a motion to dismiss pursuant to Rule 12(b)(5), the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Id.*

## DISCUSSION

### I. Relief from Default

The Court interprets Defendant's opposition to the motion for default judgment also as a motion for relief from the clerk's entry of default, *see Meehan*, 652 F.2d at 276, and considers it in tandem with the motion for default judgment. As noted above, the inquiry turns on (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party. The Court discusses each in turn.

#### A. Willfulness

The Second Circuit has "interpreted 'willfulness,' in the context of a default, to refer to conduct that is more than merely negligent or careless, but is instead egregious and not satisfactorily explained." *Bricklayers*, 779 F.3d at 186. But a "finding of bad faith is not a necessary predicate to concluding that a defendant acted 'willfully.'" *Id.* at 187. "Rather, it is sufficient to conclude that the defendant defaulted deliberately." *Id.*

Here, the Court concludes that Defendant defaulted deliberately. On December 13 and 14, 2023, Defendant was served with the Complaint, the order permitting alternative service, and

6

the summons via email, text message, WhatsApp, and Facebook messenger; Plaintiff's counsel received confirmation of delivery from WhatsApp and email. *See* ECF No. 32 at ¶¶ 2-3, 6. Defendant was served with subsequent orders of this Court by the same means on February 19, April 5, April 10, May 16, and June 12, 2024. *See* ECF Nos. 37, 46, 50, 52, 55. On June 10, the evening before the default judgment conference, Defendant emailed the Court—from the same email address Plaintiff had used to effect service—stating that he "was only recently made aware of the litigation, the Plaintiff's motion for default judgment, and the conference, living abroad since 9 October 2022." ECF No. 53. He provides no further explanation or justification in his briefing on the instant motions. It was not until two-and-a-half weeks later, on June 28, 2024, that Defendant entered an appearance on the docket through counsel. *See* ECF No. 56.

The Second Circuit has observed that, "where defendant 'does not deny that he received the complaint, the court's orders, or the notice of default judgment' and 'does not contend that his non-compliance was due to circumstances beyond his control,' an inference of willful default is justified." *Bricklayers*, 779 F.3d at 187 (quoting *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013)). Here, Defendant does not deny that he received the Complaint and this Court's orders; rather, he represented to the Court on the eve of the default judgment conference that he had received information about the litigation "only recently"—without ever stating *when* he learned of the case. *See* ECF No. 54. Defendant's account is unpersuasive, particularly given that he contacted the Court from the same email address Plaintiff had used for service. *Compare* ECF No. 53 *with* ECF Nos. 32, 37, 46, 50, 52, 55. Moreover, he fails to explain why living abroad would affect his access to email, WhatsApp, text messaging, or Facebook—in other words, he does not "contend that his non-compliance was due to circumstances beyond his control," *Bricklayers*, 779 F.3d at 187. Against Plaintiff's sworn affidavits of service, *see* ECF Nos. 32, 37, 46, 50, 52, 55, Defendant offers no evidence, such as

7

a sworn declaration, to rebut the presumption of proper service or to support his assertion that he had only "recently" learned of the litigation in June 2024. *See Old Republic Ins. Co. v. Pac. Fin. Servs. Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) ("A defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing.").

The Court concludes that Defendant's nearly six-month delay in responding to this litigation was more than "merely negligent or careless" and instead "was egregious and not satisfactorily explained." *Bricklayers*, 779 F.3d at 186; *see State Univ. N.Y. v. Triple O, LLC*, No. 21-2116 Civ., 2022 WL 14177198, at *3 (2d Cir. Oct. 25, 2022) (finding no abuse of discretion where "district court found that, by ignoring the complaint for several months and defaulting," the defendant's conduct "was egregious and was not satisfactorily explained"); *Wilmington Tr., Nat'l Ass'n v. Rafiq*, No. 22 Civ. 6177, 2023 WL 6237680, at *4 (S.D.N.Y. Sept. 26, 2023) (finding willful default where defendant "ignored the complaint for several months"). The Court finds that Defendant "intentionally and repeatedly evaded service of the Summons and Complaint in this case." *Wilmington Tr.*, 2023 WL 6237680, at *4. Accordingly, the Court concludes that Defendant's default was willful.

### B. Meritorious Defenses

"In connection with a motion to vacate a default judgment, a defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). "The test of such a defense is measured not by

8

whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98.[5]

Defendant raises two principal grounds for dismissal of the Complaint. First, he argues that Plaintiff has failed to state a valid basis for subject matter jurisdiction because Defendant is a former diplomat. *See* Def.'s Opp. Mot. Default J. ("Def.'s Opp.") 3-4, ECF No. 61. Second, he reiterates his previous argument that Plaintiff failed to properly serve Defendant under the Hague Convention, thereby depriving the Court of personal jurisdiction over him. *See id.* at 4-8. The Court considers each argument in turn.

    1. *Subject Matter Jurisdiction*

Defendant argues that Plaintiff has failed to establish a statutory basis for jurisdiction because Defendant "is a former diplomat." *Id.* at 3. Plaintiff responds, however, that because Defendant no longer holds his diplomatic post and the claims involve private—not official—acts, diplomatic immunity does not apply. Pl.'s Reply Supp. Default J. ("Pl.'s Reply") 4, ECF No. 71. Plaintiff is plainly correct.

The Vienna Convention on Diplomatic Relations, which the United States has ratified, governs the immunity of diplomats from suit. 23 U.S.T. 3227; 22 U.S.C. § 254d. "Although diplomats enjoy broad immunity pursuant to the Vienna Convention from civil and criminal process, diplomats lose much of their immunity following the termination of their diplomatic status." *Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2d Cir. 2010) (internal citation omitted). Article 39(2) of the Vienna Convention "provides for so-called 'residual' immunity," under which, "once a diplomat becomes a 'former' diplomat, he or she is not immune from suit for

---

[5] Defendant argues that the Court need not address the meritorious defenses factor if there is no finding of willfulness or prejudice to Plaintiff. *See* Def.'s Opp. 12. However, because the Court has found Defendant's default to be willful, the Court goes on to consider whether he has presented meritorious defenses.

prior acts unless those acts were performed 'in the exercise of [the former diplomat's] functions as a member of the mission.'" *Id.* at 134 (quoting Vienna Convention Art. 39(2)) (alteration in original).

In *Swarna*, the Second Circuit held that a former diplomat was not immune from suit for alleged trafficking, involuntary servitude, forced labor, assault, and sexual abuse of a former household employee because the plaintiff's employment and the defendant's treatment of her were not "included within his official acts as a diplomat." *Id.* at 127, 140. Specifically, the Second Circuit noted that "[t]he alleged facts clearly show that [the plaintiff] was employed to meet [the defendant's] and his family's private needs and not any mission-related functions. [The plaintiff] worked an average of seventeen hours a day, seven days a week, cooking, cleaning, caring for [the defendant's] children, and tending to the family's personal needs." *Id.* at 138. Moreover, the plaintiff's G-5 visa, which is reserved for noncitizens who are "employed in a domestic or personal capacity" by another noncitizen, *see* 22 C.F.R. § 41.21(a)(4), "reflected precisely her occupation in the United States: a personal servant hired to meet the individual defendants' private needs." *Swarna*, 622 F.3d at 138.

The facts alleged here reflect that Plaintiff, too, was a household employee hired to meet Defendants' personal needs. Plaintiff entered the United States on a G-5 visa to work as a domestic employee for Defendants. Compl. ¶ 34. She worked an average of twenty hours a day, seven days a week, cooking, cleaning, and caring for Defendant's children. *Id.* ¶¶ 48-50. Because Defendant's employment and alleged mistreatment of Plaintiff did not fall within his official acts as a diplomat, he is not entitled to residual diplomatic immunity. *See Swarna*, 622 F.3d at 138.

In his reply, Defendant does not dispute that *Swarna*'s holding controls. Rather, he appears to fault Plaintiff for failing to cite the case earlier—essentially arguing that, in neglecting

10

to rebut his claim to residual immunity in her Complaint, she failed to establish subject matter jurisdiction. *See* Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply") 1 n.1, 3-4, ECF No. 74. But Plaintiff's Complaint properly cited the basis for subject matter jurisdiction—federal question jurisdiction pursuant to 28 U.S.C. § 1331—and the relevant federal cause of action under the TVPA. Compl. ¶ 5. Plaintiff was not required to preemptively rebut a defense in her Complaint—certainly not one that is squarely foreclosed by Second Circuit precedent. *Cf. Broidy*, 944 F.3d at 444 (holding, in the context of an immunity claim by a *current* diplomat, that "*where a defendant has demonstrated diplomatic status*, . . . plaintiffs bear the burden of proving by a preponderance of the evidence that an exception to diplomatic immunity applies and that jurisdiction therefore exists" (emphasis added)).

2. *Service of Process*

Defendant next argues that the Court lacks personal jurisdiction because Plaintiff failed to properly serve him pursuant to the Hague Convention. "Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion." Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1353 (footnote omitted). Here, Defendant does not appear to challenge the actual existence of personal jurisdiction (which, according to Plaintiff, is based on New York's long-arm statute, *see* Compl. ¶ 8), only the means by which he was given notice of this action. *See* Def.'s Opp. 4-8. Accordingly, the Court considers this a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5).

Defendant's argument is foreclosed by the law of the case. On December 8, 2023, the Court approved alternative service on Defendant, holding that Plaintiff had exercised reasonable diligence in attempting to find Defendant's physical address but the address remained

11

unknown—and the Hague Convention therefore did not apply. *See* Dec. 2023 Op. The Court also held that the service methods Plaintiff used were reasonably calculated to reach Defendant and comported with due process. *See id.* Defendant now challenges those conclusions, but he fails to articulate any compelling basis for relief from the Court's prior order.

The standard for granting motions for relief from a prior order pursuant to Rule 60(b) is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Wilmington Tr.*, 2023 WL 6237680, at *1 (quoting *Schlafman v. State Univ. N.Y., Farmingdale*, 541 F. App'x 91, 92 (2d Cir. 2013)). The Court recognizes that Defendant did not have an opportunity to raise his objections to the methods of service of process before those methods were approved. *See* Def.'s Reply 11. But the Court has considered Defendant's objections and finds nothing in them—no "controlling decisions or data that the court overlooked," *Wilmington Tr.*, 2023 WL 6237680, at *1—to alter the Court's previous conclusion. Accordingly, and for the reasons set forth in Plaintiff's Reply, *see* Pl.'s Reply 5-8, the Court concludes that Defendant has failed to meet the "strict" standard for reconsideration of the Court's prior order. Defendant was properly served, and the Court has properly exercised personal jurisdiction over him.

3. Other Defenses

Defendant further asserts that "he has complete defenses as to one or more of the claims raised by the Plaintiff," that he "intends to produce witnesses who will disprove the merits of Plaintiff's claims," that he "expects to present testimony, which will contradict the claims made in Plaintiff's declaration," and that "[m]any of Plaintiff's sworn statements are not specific, and many tend to lump the Defendants together." Def.'s Opp. 13. None of these broad statements constitutes evidence which, "if proven at trial, would constitute a complete defense." *Enron Oil*,

10 F.3d at 98. Rather, they are precisely the kinds of "conclusory denials" that are insufficient at this stage. *See id.* Accordingly, the Court concludes that Defendant has not raised any meritorious defenses that would support setting aside default.

### C. Prejudice

The third factor is prejudice to the plaintiff. It is well established that "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Rather, "it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.*

Plaintiff argues that "Defendant's delay in appearing in this case . . . has caused Plaintiff additional emotional distress" and that "the additional delay in her recovery of damages will cause Plaintiff—a low-wage worker—real economic harm." Pl.'s Reply 10. The Court need not decide whether delay combined with the additional emotional distress and economic precarity Plaintiff faces is sufficient to establish prejudice, because the Court concludes that Defendant willfully defaulted and lacks meritorious defenses. *See Bricklayers*, 779 F.3d at 187 ("We need not reach the question of whether the plaintiff would suffer prejudice as we are persuaded that the default was willful and are unpersuaded that the defaulting party has a meritorious defense.").

\* \* \*

Here, Defendant's willfulness and his failure to substantiate any meritorious defenses counsel against relief from default. The Court accordingly denies Defendant's motion for relief from default.

## II. Default Judgment

"A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the

13

complaint are taken as true." *Bricklayers*, 779 F.3d at 187. Upon review of the parties' submissions, the Court concludes that Plaintiff's factual allegations and supporting affidavits establish Defendant's liability as a matter of law. Specifically, Plaintiff has established Defendant's liability under the TVPA for forced labor, 18 U.S.C. § 1589 (*see* Compl. ¶¶ 94-100), trafficking for forced labor, 18 U.S.C. § 1590 (*see* Compl. ¶ 101); document servitude, 18 U.S.C. §§ 1592, 1597 (*see* Compl. ¶¶ 102, 104); and conspiracy, 18 U.S.C. § 1594(b) (*see* Compl. ¶ 103). Plaintiff has also established Defendant's liability under the NYLL for failure to pay minimum wage and overtime, NYLL § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (*see* Compl. ¶¶ 106-08, 110-112); late payment of wages, NYLL § 191 (*see* Compl. ¶¶ 115-120); and failure to provide wage notice and wage statements, NYLL § 195 (*see* Compl. ¶¶ 128-130). Defendant does not challenge the sufficiency of Plaintiff's pleadings to establish liability for any of the above statutory violations, and the Court, having reviewed the pleadings, finds them sufficient.

The Court therefore grants the motion for default judgment as to liability. This ruling, however, extends only to the question of Defendant's liability. The Court will refer the matter to the assigned Magistrate Judge to address the issue of damages, including Plaintiff's arguments as to liquidated damages, interest, attorney's fees, and costs, as well as Plaintiff's standing to assert violations of NYLL § 195. *See* Pl.'s Mem. Parts III.E, IV, V, VI, VII, VIII.

### III.   Motion to Dismiss

The Court previously stated that it would construe Defendant's opposition to the motion for default judgment also as a motion to dismiss the Complaint. *See* ECF No. 65 (ordering opposition and reply briefing on Defendant's arguments in favor of dismissal). However, it has not yet ruled on whether Defendant's delay in filing that motion—nearly five months after his deadline to answer or otherwise respond to the Complaint—should be excused. *See id.* In light

of the Court's conclusion above that Defendant deliberately defaulted and should not be relieved from that default, the Court also denies as untimely Defendant's putative motion to dismiss. In any event, the Court has considered in full Defendant's arguments supporting dismissal, *see supra* Part I.B (discussing whether Defendant has presented meritorious defenses to justify relief from default), and it rejects those arguments as meritless.

## CONCLUSION

In sum, the motion for relief from default is **DENIED**, the motion for default judgment is **GRANTED** as to liability, and the motion to dismiss is **DENIED** as untimely. The Clerk of Court is respectfully requested to terminate ECF No. 42.

By separate order, the Court will enter a default judgment as to liability and will refer the matter to the assigned Magistrate Judge for an inquest on damages.

SO ORDERED.

Dated: March 17, 2025
New York, New York

DALE E. HO
United States District Judge